FILED
MAY 23 2013
CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR. 12-50131-04 |
| Plaintiff, | |
| vs. | ORDER |
| MARIO RANGEL, | (Motion for Disclosure of Grand Jury Testimony, Doc. 160) |
| Defendant. | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Defendant Mario Rangel ("Rangel") moves the Court for an order compelling the United States to produce the testimony of each witness who testified before the grand jury in this case. Doc. 160. The Government resists. Doc. 171.

## BACKGROUND

On September 25, 2012, the grand jury indicted Rangel along with eight co-defendants on charges of: Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371; Conspiracy to Harbor, Encourage, and Induce Aliens to Reside in the United States in Violation of the Law in violation of 8 U.S.C. §1324(a)(1)(A)(v)(I); and Harboring, Encouraging, and Inducing Aliens to Reside in the United States in Violation of the Law in violation of 8 U.S.C. §1324(a)(1)(A)(v)(II).

The Indictment alleges that four companies (Munoz Logging and Construction Company ("Munoz Logging"), Black Hills Thinning Company ("Black Hills Thinning"), Escalante Logging Company ("Escalante Logging") and SM Logging Company ("SM Logging") obtained contracts with the United States Government (specifically the United States Forest Service ("USFS") during a period of time beginning on January 1, 2008 through the date of the Indictment. The Indictment further alleges the companies consistently submitted bids which were lower than their competitors, and that the companies circumvented contract requirements "by hiring, employing and harboring undocumented workers, by paying these workers less than prevailing wages and benefits, and thereby obtaining contracts from USFS by submitting bids to do service work under the contracts for a lower

price than competitors, knowing that the workers were not eligible, documented or authorized workers. Their false, fictitious, and fraudulent activities were a mechanism to enrich the defendants beyond which they would otherwise be entitled beyond the contracts."

The Indictment alleges that Rangel "is a manager for Munoz Logging." It further alleges that Rangel (along with other named defendants) "paid or arranged for payment of wages to the illegal workers for work under USFS contracts by issuing checks to the illegal workers, by issuing checks to false or fictitious individuals, or by making payments by check to other employees, the proceeds of which were to be divided among several of the unauthorized alien employees in the form of cash." Count I, ¶33. The Indictment also alleges Rangel, (along with the other named defendants) "instructed unauthorized or undocumented alien employees to obtain any Social Security number, real or fictitious, whether in the employee's name or not, to use for the purpose of paying the employees." *Id.* at ¶ 34. It alleges Rangel knew the employees were illegal aliens, illegally harbored them in the United States, and conspired with the other defendants to illegally harbor the employees in the United States. Counts II and III.

## DISCUSSION

Fed. R. Crim. P. 6(e) governs the disclosure of grand jury testimony. Rangel specifically cites Fed. R. Crim. P. 6(e)(3)(E)(I) and (ii) which states:

> (E) The Court may authorize disclosure-at a time, in a manner, and subject to any other conditions that it directs-of a grand jury matter:
>     (I)    preliminarily to or in connection with a judicial proceeding;
>     (ii)   at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury;

"Although disclosure of grand jury proceedings under certain circumstances is now authorized by Rule 6 of the Federal Rules of Criminal Procedure, a long-established policy in the federal courts maintains the secrecy of these proceedings. Parties seeking disclosure must show a particularized need and the decision to permit disclosure lies within the sound discretion of the trial judge." *United States v. Benson*, 760 F.2d 862, 863 (8th Cir. 1985) (citations omitted, punctuation altered).

Rangel asserts he has shown a particularized need for disclosure. He claims the government's conduct before the grand jury was improper because (1) Rangel's employment with Munoz Logging and Construction consisted solely as manager of the *construction* division of the company, but the contracts at issue in the Indictment were with the *logging* division. Rangel formed his own construction company (Rangel Construction Company, LLC) in December, 2008 and left the employment of Munoz Logging and Construction altogether in September, 2009;[1] (2) No evidence has been submitted nor has it been alleged that any undocumented workers were hired, harbored, or induced to reside in the United States by or to work for the *construction* division of Munoz Logging and Construction or that any illegal acts occurred in relation to the multiple federal construction contracts performed by the *construction* division of Munoz Logging and Construction during Rangel's tenure as manager of the *construction* division of that company; (3)There is no evidence that Rangel Construction Company employs illegal aliens; (4) Rangel Construction Company's computers and records were mistakenly seized during the search of Munoz Logging and Construction Company's premises; (5) At the time the Indictment was issued, the Government did not know Rangel terminated his employment with Munoz Logging and Construction in September, 2009; and (6) Although Munoz Logging and Construction has been suspended from doing business with the federal government pending resolution of these federal charges, Rangel's separate business (Rangel Construction Company LLC) continues to do business with the federal government.

Rangel alleges that the Homeland Security Agent(s) who prepared the case worked closely with Alfred Heinrich from the United States Department of Agriculture and William Highland from the USFS. Heinrich and Highland both worked closely with Rangel in his capacities as construction manager at Munoz Logging and as the owner of Rangel Construction and were both aware Rangel left Munoz Logging in September, 2009. Rangel further asserts:

> As Mario is alleged to be the manager of Munoz Logging, one would assume, that during Special Agent Lunders' coordination with both Heinrich and Highland an inquiry would have been made into Mario's involvement with MLCC. It's reasonable to assume that during that inquiry both Heinrich and Highland would have

---

[1] The time period of the activities alleged in the Indictment spans from January 1, 2008 through the date of the Indictment (September 25, 2012). If Rangel's employment with Munoz logging ceased in September 2009 there remains a twenty-one month overlap with the time frame of the activities alleged in the Indictment.

fully disclosed their knowledge of Mario's involvement as president of a separate independent construction company, unaffiliated with MLCC. Further MLCC completed construction contracts on behalf of USFS while Mario was a manager of that division. How this crucial material evidence and other forms of evidence like; 1). MLCC payroll records indicating Mario's non-employment in 2009 2). SBA documents indicating Mario's status as construction division manager, that were all available at the time of the indictment and coincidentally all failed to make it to the grand jury is the subject of prosecutorial overreaching and Mario's particularized need.

Out of the 530 photo copies of 'Munoz Logging' checks provided by the Government through discovery, only 10, or a fraction of 1/53rd, are specifically referenced as having been allegedly signed by Mario and paid to those who are alleged as being fictitious payees, or undocumented workers. There are other references in Special Agent Chad Visger's August 20, 2012 report which make claims to bulk amounts of checks, in terms of 50, 59, 57, 12 and 47 wherein Mario, Barbara and Angel are alleged to have each signed some, but there is no specific indication as to how many each person signed. Assumably the above fraction will hold true if and when the referenced bulk checks are produced to counsel. As Mario's signature appears on 'Munoz Logging' . . .checks Mario was presented to the grand jury as though he actively managed Munoz Logging and signed payroll checks to loggers who were directly under his supervision and control especially if bulk checks references were made to the grand jury. One can assume that this lead grand jurors to believe Mario was intimately aware of the workers he supervised and knowledgeable as to their undocumented status. As the Government had the direct knowledge of the opposite of that fact from its coordination with Heinrich and Highland, such presentation to the grand jury was misleading and inappropriate.

Rangel cites *United States v. Calandra* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974) for the proposition that "in guiding the process of the grand jury, the United States attorney may not engage in fundamentally unfair tactics or deliberately mislead the jury. He may not, for instance, introduce evidence that he knows to be perjured, *or conceal substantial evidence negating guilt.*" (Emphasis added). That quote, however, did not come from the United States Supreme Court in *Calandra*. It came from a Second Circuit Court of Appeals case–*United States v. Ciambrone*, 601 F.2d 616, 623 (2nd Cir. 1979). In *Calandra*, the United States Supreme Court said an indictment which is valid on its face is not "subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra* 414 U.S. 338, 345, 94 S.Ct. 613, 618, 38 L.Ed.2d 561 (1974).

The Eighth Circuit has explained that "at the same time, the United States attorney is not obliged to search for and submit to a grand jury evidence favorable to the defense or negating guilt when it has not been requested by the grand jury." *United States v. Lame*, 716 F.2d 515, 518 (8th Cir. 1983). Since *Ciambrone*, the United States Supreme Court has unequivocally held that a district court may not dismiss an otherwise valid indictment on the ground that the government failed to disclose to the grand jury "substantial exculpatory" evidence. *United States v. Williams*, 504 U.S. 36, 54, 112 S.Ct. 1735, 1745, 118 L.Ed.2d 352 (1992).[2] "If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."

In its response to the motion, the Government concedes that grand jury testimony falls within the requirements of witness statement requirements pursuant to Fed. R. Crim. P. 26.2 and the Jencks Act. The Government explains: "[Pretrial] [d]isclosure is not required .. Regardless, in accordance with the practice of this Court and the Court's local Rules, disclosure of Jencks Act material will be made in advance of trial in this matter." *See* Doc. 171 at p. 5. The Government does not explicitly so acknowledge its duty to do so, but it must also provide Rangel with any grand jury materials or transcripts which constitute exculpatory information as required by the decision in *Brady v. Maryland*, 373 U.S. 83 (1963).

In its brief, the Government explains the discovery materials it has provided support the claims of criminal activity against Rangel which are contained in the Indictment. Doc. 173. Specifically, the Government represents "at a minimum, discovery shows the defendant's involvement in different aspects of the crimes charged including, among other things, signing of payroll checks to undocumented workers. The defendant's claims are trial-related matters, and are not grounds comprising a particularized need for disclosure of grand jury testimony." *Id.* at p.4.

At the heart of Rangel's claim of particularized need and/or that a ground may exist to dismiss the Indictment under Fed. R. Crim. P. 6(e)(3)(E)(ii) is that the prosecutor failed to disclose

---

[2]*See United States v. Dunn*, 2005 WL 1705303 (S.D. N.Y.) at fn 7 (recognizing that after *Williams, Ciambrone* is no longer good law.

exculpatory evidence to the grand jury. Exculpatory information in the prosecutor's possession must be given to Rangel prior to trial pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). But pursuant to *United States v. Williams*, 504 U.S. 36, 54, 112 S.Ct. 1735, 1745, 118 L.Ed.2d 352 (1992) the prosecutor's failure to present exculpatory information to the grand jury does not constitute misconduct which constitutes particularized need nor does it require pre-trial production of grand jury transcripts under Fed. R. Crim. P. 6(e)(3)(E)(I) and (ii).

## CONCLUSION and ORDER

Based upon these considerations, Rangel's motion is **GRANTED**, in part, and the United States shall provide Rangel with grand jury transcripts which may constitute witness statements under the provisions of Rule 26.2 and 18 U.S.C. § 3500 no later than the Friday prior to trial. The United states shall further provide the defendant with any grand jury materials or transcripts which constitute exculpatory information as required by the decision in *Brady v. Maryland*, 373 U.S. 83 (1963). The balance of Rangel's motion (Doc. 160) is **DENIED**.

Dated this 23 day of May, 2013.

BY THE COURT:

_____
John E. Simko
United States Magistrate Judge

ATTEST:

JOSEPH HAAS, Clerk

By _____, Deputy